IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 3:06-CR-30146-NJR |
| BYRON BLAKE, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Earlier this year, the United States Court of Appeals for the Seventh Circuit vacated the judgment entered by the undersigned in this case and remanded the action. *United States v. Blake*, 22 F.4th 637 (7th Cir. 2022). The facts underlying Blake's Motion to Reduce Sentence under the First Step Act of 2018 are outlined in the Seventh Circuit's opinion and in previous orders of this Court and will be repeated here only as necessary.

In its decision, the Seventh Circuit found that "Blake did not receive the process that the First Step Act requires." *Id.* at 641. The Court noted that:

> The court did not address the changes to the statutory penalty for Blake's offense, which was reduced from a range of 20 years–life to 10 years–life. More importantly—because any possible floor in the guideline range is well over the new statutory minimum of 10 years—the court did not determine the applicable guideline range, which depends in part on the drug quantity. Thus, the court's exercise of discretion was "divorced from the concerns underlying the Fair Sentencing Act," specifically, "redress[ing] the extreme inequity between sentences for crack and powder cocaine offenses deemed irrational and unfair by Congress." *Corner*, 967 F.3d at 666.

*Id.*

Here, the parties dispute the drug quantity. If the Court finds that Blake is responsible for 2.8 kilograms or more—but less than 25.2 kilograms of cocaine base (also known as "crack" cocaine)—then Blake's offense level starts at 34 or 36, which results in a total offense level of 40 or 42 and a new guideline range of 360 months to life imprisonment (for both offense levels, using criminal history category III). If the Court finds that Blake is responsible for an amount of 1.5 kilograms or more of cocaine base—but less than 2.8 kilograms of cocaine base—then Blake's offense level starts at 32, which results in a total offense level of 38 and a new guideline range of 292 to 365 months. Finally, the Court could apply the intervening rule from *United States v. Barnes*, 602 F.3d 790, 796–97 (7th Cir. 2010),[1] and conclude that Blake should not be held responsible for more than 500 grams of crack—"the amount the government stipulated to in its plea agreement with [a] [cooperator]." *Blake*, 22 F.4th at 643. If the Court finds that Blake is responsible for an amount of only 500 grams of cocaine base, then the new guideline range would be 235 to 293 months.

## FACTUAL & PROCEDURAL BACKGROUND

In March 2007, Blake was charged by way of superseding indictment (Doc. 100) with one count of conspiracy to distribute and possess with the intent to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1), one count of distribution of 50 or more grams of cocaine base in violation of

---

[1] In *Barnes*, 602 F.3d 790, the Seventh Circuit "held that district courts cannot use one drug quantity for a cooperator and a higher quantity for a coconspirator who went to trial if the record is the same with respect to each defendant." *United States v. Blake*, 2022 WL 31791, at *4 (7th Cir. Jan. 4, 2022).

21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count 2), and one count of distribution of a mixture and substance of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 3). Two days later the Government filed an Information to establish one prior felony drug conviction (Doc. 101) to enhance the statutory penalties pursuant to 21 U.S.C. § 851.

After a trial where Blake represented himself, a jury convicted him on all three counts. (Docs. 116–118). The jury also returned two special verdicts against Blake finding 50 grams or more of cocaine base involved in Counts 1 and 2. (Docs. 119, 121).

At sentencing in July 2007, the District Judge[2] adopted the presentence report ("PSR") and found that Blake had an offense level of 43 and a criminal history category of III. (Doc. 152). His guideline range for Counts 1 and 2 was life imprisonment. (*Id.*). His guideline range for Count 3 was 30 years (the statutory maximum term) (*Id.*). The total amount of cocaine base used as the relevant conduct for the sentencing guidelines was calculated to be 13 kilograms. (Doc. 153, p. 6).[3] At sentencing, the District Judge reasoned a life sentence for Blake would be too harsh and that a downward variance from the guideline range was appropriate. (Doc. 157; Doc. 167, p. 52). The Court sentenced Blake to 420 months' imprisonment on Counts 1 and 2 and 360 months' on Count 3, all terms running concurrently. (Doc. 156). The Court also sentenced Blake to a 10 year term of

---

[2] Blake was sentenced by District Judge G. Patrick Murphy, who retired in December 2013. The case was then transferred to the undersigned in 2014. (Doc. 204).
[3] The United States Court of Appeals for the Seventh Circuit later determined that while the Court's adoption of 13 kilograms of cocaine base was flawed, a reasonable estimate in drug quantity still met the one-and-a-half-kilogram threshold in the drug quantity chart used in the PSR and by the Court to find his base offense level under the Guidelines. *United States v. Blake*, 286 F. App'x 337, 340 (7th Cir. 2008).

supervised release on Counts 1 and 2 and a 6 year term supervised release on Count 3, all terms running concurrently. (*Id.*).

Blake subsequently filed a *pro se* motion for relief based on retroactive cocaine amendments to the sentencing guidelines under 18 U.S.C. § 3582(c) in November 2011, which the Court denied. (Doc. 197, 202). He then sought relief under Amendment 782 to the Guidelines. (Doc. 205). The Court found that Blake was not eligible for relief and denied that request as well. (Doc. 218). In April 2019, Blake filed a *pro se* motion to reduce sentence under Section 404 of the First Step Act, in which he argued that he is eligible for consideration of a reduction in his total sentence. (Doc. 228). Assistant Federal Public Defender David Brengle then filed a notice of appearance to represent Blake. (Doc. 230). In June 2019, Blake filed a motion for status requesting communication from his appointed counsel. (Doc. 231). The next month, Blake filed a motion to remove and waiver of counsel and move forward *pro se.* (Doc. 234). Blake also filed a motion to supplement pursuant to Section 404 of the First Step Act on the same day. (Doc. 235).

Blake subsequently filed an amended motion for a sentencing reduction under the First Step Act through counsel in October 2019. (Doc. 236). Blake set forward the argument that he is eligible for consideration of a reduced sentence due to his original conviction being a covered offense under the First Step Act. (Doc. 236, p. 4). Due to his eligibility, Blake argued his sentence should be reduced because his guideline range decreases when his base offense level is recalculated. (*Id.* at p. 5). Under § 2D1.1(c)(2) of the current guidelines, using the 13 kilograms calculated for relevant conduct at sentencing results in a total offense level of 42 (after a four-level increase for leadership

and two-level increase for obstruction of justice), which would result in a change of his guideline range from life to 360 months to life. (*Id.*). Further, Blake argued that the use of the one-and-a-half kilogram threshold that was discussed on appeal as the actual reasonable estimate of drug weight for sentencing would result in a total offense level of 36—with a new Guideline range of 292 to 365 months. (*Id.* at p. 6).[4]

Proceedings were stayed pending the Seventh Circuit's resolution of several cases on appeal. (Doc. 240). In April 2020, the Seventh Circuit handed down its decision in *United States v. Shaw*, 947 F.3d 734 (7th Cir. 2020), ruling as to whether certain offenses were "covered offenses" under the First Step Act. Following that decision, Blake filed a motion for summary judgment regarding his amended motion to reduce sentence under the First Step Act. (Doc. 244). The Government also filed its response to Blake's amended motion to reduce sentence. (Doc. 246). In its response, the Government argued that, despite being eligible, the Court should deny any reduction to Blake's sentence. (Doc. 246, p. 8).

## LEGAL STANDARD

Section 404 of the First Step Act makes the provisions of the Fair Sentencing Act of 2010 retroactive to defendants who committed their offenses and were sentenced before August 3, 2010. *See* First Step Act, § 404. The Act gives district courts discretion to reduce

---

[4] Counsel argues that with a base offense level of 32, the total offense level would be 36 after enhancements for leadership (4 levels) and obstruction of justice (2 levels) (Doc. 236, p. 6). In fact, the total offense level would be 38 (32 + 4 + 2 = 38). A total offense level of 38 with a criminal history category of III results in an advisory guideline range of 292 to 365 months' imprisonment, which is what counsel references. Thus, the mention of a total offense level of 36 appears to be simply a typographical error.

a defendant's sentence for a cocaine base offense as if the sections of the Fair Sentencing Act were in effect at the time the defendant's offense was committed. *Id.*

Section 404 of the First Step Act provides, in relevant part:

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Accordingly, defendants who were convicted before August 3, 2010, of a cocaine base offense for which the Fair Sentencing Act reduced their statutory penalties, are now eligible for consideration of a reduced sentence. *Id.* Whether to reduce the sentence of an eligible defendant is left to the sentencing court's discretion. *Id.*

In determining whether a defendant is eligible for a reduced sentence, "a court needs only to look at a defendant's statute of conviction, not the quantities of crack involved in the offense." *United States v. Shaw*, 957 F.3d 734, 735 (7th Cir. 2020). If an

offense was modified by the Fair Sentencing Act, that defendant is eligible "to have the district court consider whether to reduce the previously imposed term of imprisonment." *Id.* In making its decision whether to reduce a sentence for eligible defendants, a district court must assure the appellate court that it relied upon the record and considered the parties' arguments. *Id.* at 740. Further, there is nothing in the First Step Act that precludes a district court from considering relevant post-sentencing conduct. *See id.* at 741 (ruling that nothing prevented the district court from taking into consideration the defendant's arguments, which included an argument that his post-sentence conduct should be considered).

## ANALYSIS

### I.     Eligibility of Sentence Reduction

The parties agree that Blake is eligible for a reduction under Section 404 of the First Step Act because Counts 1 and 2 are covered offenses. These cocaine base offenses were committed before August 3, 2010, and the penalty for those crimes has been modified by the Fair Sentencing Act as a whole. *See Shaw*, 947 F.3d at 739. Blake need only be convicted of a single covered offense to seek relief on all counts of conviction, whether covered by the First Step Act or not. *United States v. Hudson*, 967 F.3d 605 (7th Cir. 2020). Thus, Blake is eligible for consideration to have his sentence reduced under the First Step Act.

### II.    Lower Penalties Set by the Fair Sentencing Act

Next, "[i]f the defendant is eligible, then the court faces the question of whether it should reduce the sentence." *Hudson*, 967 F.3d at 610. "[A] district court evaluating a First Step Act motion is not required to lower a First Step Act movant's prison term." *See United*

*States v. Fowowe*, 1 F.4th 522, 529 (7th Cir. 2021) (citing *Corner*, 967 F.3d at 665). "However, the court still must determine the lower penalties set by the Fair Sentencing Act and consult that updated sentencing range to reach its decision." *Id.* (citing *Corner*, 967 F.3d at 665) ("We conclude that a district court's discretionary determination whether to grant a petitioner's motion for a reduced sentence under the First Step Act must be informed by a calculation of the new sentencing parameters."). Thus, the court "must begin by recalculating the statutory minimum and maximum that would have applied had §§ 2 and 3 of the Fair Sentencing Act been in effect at the time the movant was originally convicted." *Id.*

The Fair Sentencing Act increased the threshold amount of cocaine base to qualify for a conviction under §841(b)(1)(A) from more than 50 grams to more than 280 grams. Today, if a defendant is convicted of an offense involving less than 280 grams but more than 28 grams, the conviction falls under 21 U.S.C. § 841(b)(1)(B). Thus, if Blake had been convicted today, and the jury found that the amount of cocaine base involved in the offence was in excess of 50 grams (with no special finding that it exceeded 280 grams), with the enhancement under 21 U.S.C. §851, he would face a statutory range of 10 years to life on Counts 1 and 2 and a statutory maximum sentence of 30 years on Count 3, with a supervised release range of not less than eight years (up to life) on Counts 1 and 2, and not less than six years of supervised release on Count 3. To demonstrate the change in the statutory sentencing scheme, the Court refers to the chart below (the provisions applicable to Blake are bolded):

| Count | Charge & Statutory Cite | Statutory Imprisonment Range *Before* Fair Sentencing Act | New Statutory Imprisonment Range *After* Fair Sentencing Act |
|---|---|---|---|
| 1 | Conspiracy to distribute over **50 grams of cocaine base** in violation of § 841(a)(1), 841(b)(1)(A), 846 | No prior offense: 10 years to life. **1 prior offense: 20 years to life.** 2 prior offenses: Life. | If *greater than* 280 grams, then unchanged by FSA. But if *less than* 280 grams and greater than 28 grams, then: No prior offense: 5 years to 40 years. **1 prior offense: 10 years to life.** 2 prior offenses: 10 years to life. |
| 2 | Distribution of greater than **50 grams of cocaine base** in violation of § 841(a)(1) and (b)(1)(A) | No prior offense: 10 years to life. **1 prior offense: 20 years to life.** 2 prior offenses: Life. | If *greater than* 280 grams, then unchanged by FSA. But if *less than* 280 grams and greater than 28 grams, then: No prior offense: 5 years to 40 years. **1 prior offense: 10 years to life.** 2 prior offenses: 10 years to life. |
| 3 | Distribution of a mixture and substance containing cocaine in violation of § 841(a)(1) and (b)(1)(C) | No prior offense: 0 years to 20 years. 1 prior offense: **0 years to 30 years.** 2 prior offenses: 0 years to 30 years. | **Unchanged by FSA.** |

For Counts 1 and 2, the jury returned two special verdicts against Blake finding 50 grams or more of cocaine base involved. (Docs. 119, 121). Thus, if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the Blake's offenses were committed,

the statutory imprisonment range on those counts would be a minimum of 10 years and a maximum of life.[5]

### III. Sentencing Guidelines and 18 U.S.C. § 3553 Factors

The Seventh Circuit clarified that factors such as "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct" are part of the consideration of a sentence reduction." *Hudson*, 967 F.3d at 609. Under the current guidelines, the drug quantity is just one consideration.

*Sentencing Guidelines*

At sentencing, Blake's offense level was a 38 because he distributed more than 1.5 kilograms of cocaine base. (Doc. 153). An additional four-level increase was made because he was an organizer. (*Id*). His offense level increased another two levels for obstruction of justice, and thus his total offense level was 44. (*Id.*). Blake earned five criminal history points under the guidelines, which put him in criminal history category III. (*Id.*). Based on his offense level and criminal history category, the guideline range was life imprisonment for Counts 1 and 2. The guideline range for Count 3 was 360 months.

---

[5] The Court recognizes that the First Step Act (passed in December 2018) altered the penalties for a § 841(b)(1)(A) crack offense (involving more than 280 grams of cocaine base—instead of the previous threshold of 50 grams) committed after one or two prior offenses to 15 years to life with one prior offense and 25 years to life after two prior offenses. Although convicted under § 841(b)(1)(A) in Counts 1 and 2, because of the amount of cocaine base charged and found by the jury (in excess of 50 grams), the statutory scheme now is "as if" Blake has been convicted under § 841(b)(1)(B) for an amount of cocaine base in excess of 28 grams (but less than 280 grams). To avoid confusion, the Court references the March 2007 conviction under § 841(b)(1)(A). The First Step Act did not change the statutory sentences for offenses involving more than 28 grams but less than 280 grams of cocaine base (the range that applies to Blake).

For supervised release, the guideline range was 10 years on Counts 1 and 2, and six years on Count 3 (the minimum called for by statute at the time). Judge Murphy granted a downward variance and sentenced Blake to a total term of 420 months' imprisonment, to be followed by 10 years of supervised release on Counts 1 and 2 and six years on Count 3 (all to be served concurrently).

On the first appeal, the Seventh Circuit upheld Blake's sentence, but noted the district court erred when it found Blake responsible for 13 kilograms of crack. *See United States v. Blake*, 286 F. App'x 337, 338–40 (7th Cir. 2008). Specifically, the Court noted that "the district court should have attempted to resolve the inconsistencies in [the] [cooperator's] testimony to reach a reasonable estimate of drug quantity." *Id*. at 340. The Court explained that to arrive at 1.5 kilograms, the district court needed only to believe that Blake made "only 12 deliveries of 4.5 ounces of crack, or about *three months* of the relationship [the] [cooperator] *claimed lasted for two years*." *Id*. (emphasis added).

The timing of the Seventh Circuit's decision in *Blake* is significant, because the 2007 Guidelines Manual established a base offense level of 38 for an amount of 1.5 kilograms or more of cocaine base. Thus, the Seventh Circuit in *Blake* was showing that if the district court considered *only* 12 deliveries, then Blake's offense level would still start at 38.

Now the threshold quantities in the Guidelines Manual are quite different. Today, if the relevant conduct amount is at least 2.8 kilograms but less than 8.4 kilograms of cocaine base, the base offense level is 34. If the amount is more than 8.4 kilograms but less than 25.2 kilograms of cocaine base, the base offense level is 36. The amount would have to be greater than 25.2 kilograms to reach the base offense level of 38 (which was triggered

in Blake's PSR).

While the Court will not rely on the drug quantity that the Probation Office included in the PSR (which the Seventh Circuit called into question on the direct appeal—*see* Doc. 181), it is reasonable to find that Blake was responsible for more than 2.8 kilograms of crack cocaine. To reach this finding, the Court would only need to believe that Blake made 24 deliveries of 4.5 ounces (1 ounce = 28.35 grams; 4.5 x 28.35 x 24 = 3,061.8 grams or 3.1 kg) of cocaine base, or about *six months* of the relationship the cooperator claimed lasted for about two years (but could have only lasted 19 months according to the Seventh Circuit—*see* Doc. 181, p. 4). The Court need not decide whether the amount of relevant conduct exceeded 8.4 kg—thus triggering a base offense level of 36 instead of 34—because whether the base offense level is 34 or 36, with the enhancements for leadership (4 levels) and obstruction of justice (2 levels), the total offense level would be either 40 or 42 which, with a criminal history category of III, produces an imprisonment range of 360 months to life imprisonment.[6] Thus, the Court finds that if it were sentencing Blake today, the advisory guideline range for imprisonment would be 360 months to life imprisonment.

---

[6] The Court rejects Blake's assertion that the relevant conduct amount was only 1.5 kilograms of cocaine base, thus triggering a base offense level of 32. The Seventh Circuit referred to this amount only because it was the threshold amount to trigger a base offense level of 38 at the time of sentencing—much like 2.8 kilograms of cocaine base is all that is needed now to trigger a base offense level of 34. The Court also declines the invitation to rely only on the amount of cocaine base attributable to the co-defendant (500 grams, invoking a base offense level of 30), as Blake was the co-defendant's supplier, and the testimony referenced herein supports a relevant conduct finding of at least 2.8 kilograms. Simply put, the record is not the same with respect to each defendant.

*Statutory Factors*

Blake, now almost 53 years old, has taken positive steps to reform his life, and the Court commends him for doing so. Blake has participated in over 480 hours of educational programing. (Doc. 236-1). He has worked in food service, maintenance, orderly, UNICOR, and in yard detail during his time in the Bureau of Prisons. (*Id*.). "He has become a minister and would like to pursue his ministry upon his release." (Doc. 236, p. 6). Finally, perhaps most important, Blake has had no disciplinary action in at least the first 12 years he has been in the custody of the Bureau of Prisons. (*Id*.). These are all good things.

Blake's family remains supportive, as set forth in letters to the Court from his sisters Coretta and Vickie and his son Byron, Jr. (Doc. 236-3). Sadly, the sisters note that one of their brothers died in July 2019 while in custody at Centralia Correctional Center. (*Id*.). And while the letters mention Blake's mother being very ill at the time the letters were written in September 2019, the Court understands that his mother passed away in January 2021.[7] The Court extends its condolences to Blake and his family for their losses.

While there are certainly mitigating factors, there are other factors to consider. Blake was a decision-maker in a network that distributed cocaine and cocaine base in Southern Illinois from the early 1990s to the mid-2000s. More troubling is Blake's threatening behavior before and after trial—along with his criminal history of violent felonies. Considering Blake's criminal history, some sentencing disparity between Blake

---

[7] http://www.officerfuneralhome.com/guestbook/mrs-coretta-simmons (last visited Mar. 15, 2022).

and his co-defendant was warranted, but the fact that his co-defendant has already been released weighs in favor of a sentencing reduction for Blake in compliance with the new revised guideline range.

Having carefully reviewed the record in this case, the Court agrees that Blake is eligible for a sentence reduction and finds that a sentence reduction is warranted under Section 404 of the First Step Act. Considering Blake's efforts at rehabilitation and conduct in prison and the sentence of his co-defendant, along with his criminal history, the Court chooses to impose a sentence at the low-end of the revised guideline range. The 420-month sentence imposed by Judge Murphy was a downward variance from the guideline range because he deemed life imprisonment a sentence greater than necessary to meet the objectives of sentencing. Had the advisory guideline range been 360 months to life imprisonment at the time of Blake's original sentencing in 2007, it is reasonable to conclude that a 360 month term of imprisonment would have been deemed sufficient, but not greater than necessary, to achieve those goals. In any event, the Court concludes today that it is.

## Conclusion

For these reasons, the Motion and Amended Motion to Reduce Sentence (Docs. 228, 236) pursuant to the First Step Act of 2018 are **GRANTED in part** and **DENIED in part.** Blake's sentence is **REDUCED** to **360 months'** imprisonment on Counts 1 and 2, to run concurrently to each other and to the 360 month term of imprisonment on Count 3.

The Court imposes an **8-year** term of supervised release on Counts 1 and 2 and a **6-year term** on Count 3. All terms shall run concurrently.[8]

**IT IS SO ORDERED.**

DATED:  March 16, 2022

*[signature: Nancy J. Rosenstengel]*

NANCY J. ROSENSTENGEL
Chief U.S. District Judge

---

[8] While caselaw in other jurisdictions supports the notion that the First Step Act permits plenary resentencing, this Court is bound by precedent that concludes plenary resentencing is at most a matter within this Court's discretion. *See United States v. Hamilton*, 790 F. App'x 824, 826 (7th Cir. 2020) (acknowledging that "nothing in the First Step Act requires a district court to hold any sort of hearing"); (citing *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019) (noting the mechanics of the First Step Act sentencing include "[t]he district court decid[ing] on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act"); *Cf. United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019) (finding that "[t]he First Step Act ultimately leaves the choice whether to resentence to the district court's sound discretion").